# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF TEXAS

# HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. H-12-93** |
| | § | |
| **DEVIN RAY FINKE** | § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United

States Attorney for the Southern District of Texas, Douglas Davis and Julie Searle,

Assistant United States Attorneys, the defendant, Devin Ray Finke, and the

defendant's counsel, Charles Medlin, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B)

of the Federal Rules of Criminal Procedure, state that they have entered into an

agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1.     The defendant agrees to plead guilty to Count One of the Indictment.

Count One charges defendant with conspiracy to encourage and induce illegal aliens

to come to, enter or reside in the United States in violation of Title 8, United States

Code, Section 1324(a)(1)(A)(v)(I).  The defendant, by entering this plea agrees that

1

he/she is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

## Punishment Range

2.    The **statutory** maximum penalty for each violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I) is imprisonment for up to ten years and a fine of not more than $250,000. Additionally, the defendant may receive a term of supervised release after imprisonment of up to three years. Defendant acknowledges and understands that if he/she should violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he/she eligible for parole.

## Mandatory Special Assessment

3.    Pursuant to Title 18, U.S.C. § 3013(a)(2)(A), immediately after sentencing, defendant will pay to the Clerk of the United States District Court  a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order  payable to the

Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Fine and Reimbursement

4.      Defendant understands that under the Sentencing Guidelines, the Court is permitted to order the defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release; if any is ordered.

5.      Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment.

6.      Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to sentencing if he/she is requested to do so.   In the event that the Court imposes a fine or orders the payment of restitution as part of the Defendant's sentence, the Defendant shall make complete financial disclosure by truthfully executing a sworn financial statement immediately following his/her sentencing.

## Immigration Consequences

7.      If the defendant is not a citizen of the United States, a plea of guilty may result in deportation, exclusion from admission to the United States, or the denial of

naturalization.

## Cooperation

8.     The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentence Guidelines. The defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should the defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the Sentencing Guidelines and Policy Statement. The defendant further agrees to persist in that plea through sentencing and to fully cooperate with the United States. The defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

9.     The defendant understands and agrees that "fully cooperate" as used herein, includes providing all information relating to any criminal activity known to defendant, including but not limited to immigration violations. The defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a)     Defendant agrees that this plea agreement binds only the United States

4

Attorney for the Southern District of Texas and defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his/her Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney can and will be prosecuted under the appropriate perjury, false statement or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his/her possession or under his/her control relating to all areas of inquiry and investigation.

(f) Should the recommended departure, if any, not meet the defendant's expectations, the defendant understands he/she remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his/her plea.

### Waiver of Appeal

10. Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. The defendant agrees to waive the right to appeal the conviction and sentence imposed or the manner in which it

was determined on any grounds set forth in Title 18 U.S.C. § 3742. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding. In the event the defendant files a notice of appeal following the imposition of the sentence, the United States will assert its rights under this agreement and seek specific performance of this waiver.

11.    In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction, not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing

Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

12.     The Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

13.     The United States agrees to each of the following:

(a)     At the time of sentencing, the United States agrees not to oppose defendant's anticipated requests to the Court and the United States Probation Office that he/she receive a two (2) level downward adjustment pursuant to U.S.S.G. Section 3E1.1(a) should the defendant accept responsibility as contemplated by the Sentencing Guidelines and that he/she be sentenced at the low end of the Sentencing Guidelines.

(b)     If the defendant qualifies for an adjustment under U.S.S.G. Section 3E1.1(a), the United States agrees not to oppose the defendant's request for an additional one level departure based on the timeliness of the plea or the expeditious manner in which the defendant provided complete information regarding his/her role in the offense if the defendant's offense level is 16 or greater.

### United States' Non-Waiver of Appeal

14.     The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office; and,

(d)     to file a pleading relating to these issues, in accordance with U.S.S.G. Section 6A1.2 and Title 18, U.S.C.§ 3553(a).

## Sentence Determination

15.     Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, U.S.C. § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge.  If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill

all of the obligations under this plea agreement.

## Rights at Trial

16. Defendant represents to the Court that he/she is satisfied that his/her attorney has rendered effective assistance. Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

    (a) If defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the court all agree.

    (b) At a trial, the United States would be required to present witnesses and other evidence against the defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court.

    (c) At a trial, defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he/she could testify on his/her own behalf.

## Factual Basis for Guilty Plea

17.    Defendant is pleading guilty because he/she is guilty of the charges contained in Count One of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish the Defendant's guilt:

The Diplomatic Security Service (D.S.S.) Received information from an Agent serving in Monterrey, Mexico regarding a visa fraud scheme involving Devin Ray Finke (**FINKE**) owner, J.M. and N.M., recruiters, of American International Labor Services (AILS). Allegedly, H-2B applicants were charged approximately $2,600.00 for each visa.

Further investigation by Diplomatic Security Service (D.S.S.) revealed that members of AILS originally worked for DAB Services. When DAB Services disbanded it broke into two different companies: HB Services and AILS. HB Services (previously investigated by D.S.S.) a Houston-based company, operated by S.B. and his partner C.H., helped facilitate eleven fraudulent petitions requesting 966 workers on behalf of eight legitimate U.S. companies.

It was also discovered that AILS helped facilitate eleven fraudulent petitions requesting 1,712 workers on behalf of nine legitimate U.S. companies. A total of 298 H-2B visas was subsequently issued to Mexican H-2B visa applicants for these petitions, even though a small fraction (approx. 8%) of these workers actually worked for the intended petitions. AILS, with the assistance of recruiters in Mexico, charged up to $2,600.00 for each H-2B non-immigrant visa (NIV) applicant for their visa and transportation to the U.S. Subsequently the investigation showed that AILS engaged in an elaborate scheme to defraud the U.S. government by using legitimate U.S. companies, oftentimes very small proprietorships, in submitting H-2B workers petitions with a grossly inflated number of workers needed.

On December 2, 2009, D.S.S. Agents interviewed Jose ROJAS, the owner of Rojas Construction, a landscaping business based in Houston, Texas, which has seven full-time employees. ROJAS identified a photo of Devin **FINKE** as the owner of a company which was supposed to help him in supplying legal temporary workers from Mexico. ROJAS stated he requested only seven to ten legal temporary workers and no more. ROJAS provided copies of four checks he provided **FINKE** at a meeting in a Walgreens parking lot in Houston, Texas. Three of the checks were payable to the Department of Homeland Security and the last for $783.00 was payable to AILS. These checks were all dated August 24, 2007, one week after the certification of an ETA-750 (Application for Alien Employment Certification), submitted to the U.S. Department of Labor on August 17, 2007. According to ROJAS, **FINKE** and J.M. obtained visas for workers in Rojas's business name without his permission.

On February 2, 2010, D.S.S. Agents Interviewed Marcos ROJAS, the nephew of Jose ROJAS. Marcos identified a photo of **FINKE** and stated Jose ROJAS appointed him to be the principal liaison between Rojas Contractors and AILS. Marcos ROJAS provided D.S.S. Agents with a detailed description of his encounters with **FINKE**, statements made by **FINKE** including "in order to receive fifty workers, one had to ask for 500", and an organizational chart of how AILS is structured, including the link between AILS, J.M and N.M., and **FINKE**. Marcos ROJAS also identified an I-129 Petition for Rojas Contractors, Inc. signed by Devin **FINKE** which stated that Rojas Contractors had a net annual income of three-million dollars when in fact the true net income was one and a half million dollars.

On April 4, 2011, D.S.S. Agents interviewed Steven SCHAPER, owner of River Rock Landscape Development, Inc. SCHAPER was shown a copy of the Department of Labor Form ETA-750 (Application for Alien Employment Certification) which requested fifty-five workers, and a copy of the US Department of Homeland Security I-129 (Petition for a Non-Immigrant worker) bearing the signature of Devin **FINKE**. SCHAPER stated the signature on those forms purporting to be his was a forgery. SCHAPER said that **FINKE** told him to request more workers than he needed because the majority of the applicants would be denied by the consulate. SCHAPER said he requested and received only four employees for whom

he paid **FINKE** a total of $4,000

On March 14, 2011, D.S.S. Agents interviewed Mervin (MERVIN) and Robin (ROBIN) Guillot. They were informed by a Mr. ALFORD (owner of Benny's Car Wash in Baton Rouge, LA) about a meeting at his facility regarding a federal program where they could obtain foreign workers. MERVIN and ROBIN were shown a photo of **FINKE** and identified him as one of the two male subjects that conducted the meeting. At the meeting they were instructed to request more workers than they really needed because some would not make it pass the application process. MERVIN also stated that only one of the signatures on the ETA-750 was his. Both signatures appear to say "Mervin J. Guillot, Jr," but are signed in two completely different signature styles.

On March 15, 2011, D.S.S. Agents interviewed Justin B. ALFORD, part owner of Benny's Car Wash located at 9611B Airline Highway in Baton Rouge, LA. ALFORD identified **FINKE** and another person as the individuals he met at the Southwest Car Wash Association Conference that was held in Baton Rouge in 2007. ALFORD confirmed his signature on the ETA-750 requesting 280 foreign workers and when questioned why he requested 280. ALFORD stated that **FINKE** instructed him to list more workers than were needed. FINKE instructed ALFORD that he did not have to use all 280 workers at the same time and rather two sets could rotate out.

On that same date, D.S.S. Agents interviewed Lloyd B. Alford, (L. ALFORD) part owner of Benny's Car wash mentioned above. L. ALFORD stated he had signed the ETA-750 requesting 223 foreign workers and was working with two men from Texas for a company called he stated was called "American International Labor Services." When L. ALFORD was shown a copy of the ETA-750 he stated only one of the signatures on that form was his. L. ALFORD stated he provided a check in the amount of $610.00 to AILS and claimed it was an appointment fee. When asked why he requested 223 employees L. ALFORD stated he was instructed by AILS to ask for more than he needed as some would be denied.

On March 8, 2011, D.S.S. Agents interviewed Bruce Culbertson

(CULBERTSON), owner of the Greenville Car Wash in Greenville, SC. CULBERTSON stated he had learned of a staffing company that specialized in bringing in foreign workers from the Southeast Car Wash Association Conference in 2007. CULBERTSON spoke with AILS for two to three months while working through the petition process, but the process ended when he received a letter from the U.S. Department of Labor saying his petitions had been denied. CULBERTSON was asked why he applied for 195 workers if he only needed thirty-five people. CULBERTSON said he was told to by **FINKE** to project his manpower requirement for a three-year period, and then ask for more than needed. CULBERTSON was also instructed to list just one of his business locations and not all three in order to keep it simple. CULBERTSON was also informed by the staffing company that he would have to pay AILS $1000 per worker once they were delivered to his location.

### Breach of Plea Agreement

18.    If defendant should fail in any way to fulfill completely all of the

obligations under this  plea agreement, the United States will be released  from its

obligations under the plea agreement, and the defendant's plea and sentence will

stand.  If at any time defendant retains, conceals or disposes of assets in violation

of this plea agreement, or if defendant knowingly withholds evidence or is

otherwise not completely truthful with the United States, then may move the Court

to set aside the guilty plea and reinstate prosecution.  Any information and

documents that have been disclosed by defendant, whether prior to or subsequent

to this plea agreement, and all leads derived therefrom, will be used against

defendant in any prosecution.

19.   Whether the defendant has breached any provision of this plea agreement shall be determined solely by the United States through the United States Attorney's Office, whose judgment in that regard is final.

### Complete Agreement

20.   This written plea agreement, including the attached addendum of defendant and his/her attorney, constitutes the complete plea agreement between the United States, defendant and his/her counsel.  No promises or representations have been made by the United States except as set forth in writing in this plea agreement.  Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

21.   Any modification of this plea agreement must be in writing and signed  by all parties.

Filed at Houston, Texas, on _NOV. 26,_____ , 2012.

_____
DEVIN RAY FINKE
Defendant

Subscribed and sworn to before me on *Nov. 26*, 2012.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____

Deputy United States District Clerk

APPROVED:

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____

DOUGLAS DAVIS
Assistant United States Attorney

_____

JULIE SEARLE
Assistant United States Attorney
Southern District of Texas

CHARLES MEDLIN
Attorney for Defendant

## PLEA AGREEMENT - ADDENDUM

I have fully explained to defendant his/her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> and <u>Policy Statements</u> and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
CHARLES MEDLIN
Attorney for Defendant

_____
Date   NOV. 26, 2012

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

DEVIN RAY FINKE
Defendant

Date

17